**In re CITY OF BRIDGEPORT, Debtor.**

**Bankruptcy No. 91–51519.**

United States Bankruptcy Court,
D. Connecticut.

July 16, 1991.

---

See also 128 B.R. 686.

Robert Zanesky, City Atty., Office of the City Atty., Roy W. Moss, Barbara L. Hankin, Zeisler & Zeisler, P.C., Bridgeport, Conn., for the City of Bridgeport.

Richard Blumenthal, Atty. Gen., Joan E. Pilver, Asst. Atty. Gen., David Hetzel, Hebb & Gitlin, Hartford, Conn., for State of Connecticut and Bridgeport Financial Review Bd.

## MEMORANDUM AND SCHEDULING ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On June 6, 1991, the City of Bridgeport, Connecticut, filed a petition under chapter 9 of the Bankruptcy Code. On June 12 the State of Connecticut and the Bridgeport Financial Review Board[1] (together "the State") filed an objection to Bridgeport's petition on the grounds that Bridgeport is not generally authorized to be a debtor by State law ("Objection 1"), it is not insolvent ("Objection 2"), and the petition was filed in bad faith ("Objection 3").[2] On June 21

---

1. The Bridgeport Financial Review Board was established by the State in June, 1988, pursuant to Special Act No. 88–80. Section 1 of that Act provides:

    It is hereby found and declared that a financial emergency exists in the town and city of Bridgeport, that the continued existence of this financial emergency is detrimental to the general welfare of the city and the state, that the town and city's continued ability to borrow in the public credit markets and the resolution of this financial emergency is a matter of paramount public interest and that to achieve this resolution it is necessary, appropriate and an essential public purpose to provide in this act for the financing of deficits resulting from the city's operations, the imposition of financial management controls and the creation of the Bridgeport financial review board to review the financial affairs of the town and city of Bridgeport, all in order to maintain access to public credit markets, to fund the city's accumulated deficits and to restore financial stability to the town and city of Bridgeport.

2. Bankruptcy Code § 921(c) provides:

    After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title.

    Code § 109(c) provides:

    An entity may be a debtor under chapter 9 of this title if and only is such entity—
    (1) is a municipality;
    (2) is generally authorized to be a debtor under such chapter by State law, or by a govern-

the State filed an amended objection, adding a fourth ground that the mayor was not properly authorized by the Bridgeport Common Council to file the petition ("Objection 4").

A hearing on Objection 1 was held on June 26 at which the parties presented the legal arguments on the question of Bridgeport's general authority under State law. A decision on Objection 1 is under advisement. An evidentiary hearing on Objections 2, 3, and 4 commenced on July 16. In preparation for that phase of the case, I conducted a conference call with counsel for Bridgeport and the State on July 11. During that conference, the parties were informed that they would each have twenty hours to present their direct case and cross-examine their adversary's witnesses, and that the burden was on them to demonstrate that more time was needed. Bridgeport now seeks to have its time increased to twenty-eight hours, and the State argues that its time should be increased by any additional time given to Bridgeport.

## II.

Rule 403 Fed.R.Evid., made applicable by Bankruptcy Rule 9017, provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 611(a)(2) provides in part:

Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... avoid needless consumption of time....

Thus, Rule 403 provides that the court may exclude evidence which consumes more time than its probative value justifies, and Rule 611(a) mandates that the court control the presentation of evidence in a way that avoids the needless consumption of time. *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 10, 13 (D.Conn.1977); *United States v. Reaves*, 636 F.Supp. 1575, 1578 (E.D.Ky.1986).

Parenthetically, it is observed that this court has a heavy case load and other litigants have a legitimate expectation that their cases will be speedily and efficiently heard. Moreover, this court has an obligation to manage cases before it in a way that eliminates unjustifiable expense and delay. *SCM Corp., supra*, 77 F.R.D. at 13–14; *Reaves, supra*, 636 F.Supp. at 1578; *Galaxy Assoc. v. Sheffield Corp. (In re Galaxy Assoc.)*, 118 B.R. 8, 10 (Bankr.D. Conn.1990).

It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment and whim. ... The rule should merely declare the trial court empowered to enforce a limit when in its discretion the situation justifies this....

*SCM Corp., supra*, 77 F.R.D. at 14 (quoting 6 Wigmore, *Evidence* § 1907 (Chadbourn rev.1976)). In certain circumstances, it is appropriate for a court to assign an aggregate time for trial and leave it to the parties to select the evidence with the most probative value which can be presented within that time frame. *Id.* at 13; *Harris v. Marsh*, 679 F.Supp. 1204, 1235 (E.D.N.C. 1987); *In re Galaxy Assoc., supra*, 118 B.R. at 10. Such a time limit has the benefit of requiring " 'counsel to exercise a discipline of economy choosing between what is important and what is less so.' "

---

mental office or organization empowered by State law to authorize such entity to be a debtor under such chapter;
(3) is insolvent;
(4) desires to effect a plan to adjust such debts; and
(5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
(C) is unable to negotiate with creditors because such negotiation is impracticable; or
(D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

*Reaves, supra,* 636 F.Supp. at 1580 (quoting Leval, *From the Bench,* Litigation, 7 (1985)).

 Bridgeport's pretrial list of witnesses names sixteen witnesses; the State's list names ten.[3] It appears that the expected testimony of a number of these witnesses will be redundant. For example, Bridgeport's list states that it plans to call two witnesses to testify as to the authority of the Financial Review Board, five witnesses to testify as to the Bridgeport economy, three witnesses to testify as to the budget process in Bridgeport, and two witnesses to testify as to tax collection rates. The State's list discloses a plan to call four witnesses to testify as to the financial condition and operations of Bridgeport and three witnesses to testify on the proceedings of the Financial Review Board. Four witnesses are on both witness lists, and it is probable that most of the testimony of those witnesses will be elicited during Bridgeport's direct and the State's cross examination.

Bridgeport's pretrial list of exhibits enumerates thirty-two exhibits. The State listed 162 exhibits. A number of exhibits appear on both lists. Moreover, all exhibits have been marked for identification and I have ruled on all objections to their admissibility. *See supra* note 3. The parties have been advised that documents admitted into evidence are not to be read into the record, but that they will be expected to specifically identify in a post trial memorandum the parts of each exhibit they rely upon in order for the court to consider that evidence.

Bridgeport has persuaded me that it needs more time, but not the entire amount requested. If Bridgeport and the State avoid putting on duplicative evidence, a smaller increase in time will be adequate. In light of the large number of other pending cases in this court which are being delayed by this trial and the acknowledged need for a ruling in this case as quickly as possible, I conclude that it is appropriate and necessary to give Bridgeport slightly less time than requested so that a target date of July 24 for the end of the case in chief and an additional day for rebuttal is achievable.

### III.

I find that the following allotments of time are reasonable: Bridgeport and the State will each have twenty-six hours to present their direct cases and cross-examine the other party's witnesses; at the conclusion of the State's case, I will determine how much time will be allotted for rebuttal evidence; and IT IS SO ORDERED.